### JAMES W. MARSH v. AUGUSTUS V. JONES.

When a witness, who has once testified upon the trial of a case, has deceased, his testimony may be used upon a subsequent trial of the same case, provided the substance of what he testified, both in chief and on cross examination, can be proved, in the very words used by him.

If a dog be accustomed to bite, his owner, or keeper, who is aware of his vicious habit and suffers him to go at large, is liable for any injury committed by him.

TRESPASS ON THE CASE against the defendant as the keeper of a ferocious dog, which he knew was accustomed to bite mankind, for an injury by the dog's biting the plaintiff. Plea, the general issue, and trial by jury, May Term, 1848,—REDFIELD, J., presiding.

On trial the plaintiff gave evidence tending to prove, that the defendant was the owner and keeper of a ferocious dog, that had repeatedly bitten persons, which was known to the defendant, and that the plaintiff, while passing the house of the defendant's father, which was two or three miles from the defendant's house, was bitten by the dog.

The defendant called his father as a witness, whose testimony tended to prove, that he was himself the owner of the dog, that he suffered the defendant to keep the dog for him, that he might have called the dog the defendant's, but if he had done so, it was because he was afraid his creditors would attach him, and that about three weeks before the plaintiff was bitten, he had sent word to the defendant to bring the dog home, and the defendant had done so, and the dog remained at his house until the time he bit the plaintiff.

In the course of the trial the plaintiff offered to prove, by the justice of the peace, before whom this suit was first tried, what was the testimony of a witness who then testified before him, but who had since deceased. Upon inquiry, the justice said, that, aside from his minutes, he could recollect, that the witness testified, and the general subject of his testimony, and its character to some extent, but that he could not undertake to give the precise words, except by reference to his minutes, taken at the time of trial; that he intended to write the testimony of the witness in the very words used by him, and had no doubt he had done so; that he did not attempt

Marsh v. Jones. ·

to write every word used by the witness, but the substance of the testimony in the very words of the witness ; that he was not accustomed to write the cross examination of a witness, when nothing differing from the testimony in chief was elicited ; that in this case he felt perfectly confident, that nothing differing from the testimony in chief was elicited on cross examination, and that for that reason he had written nothing that was said on cross examination ; that he had not the least doubt, that his minutes contained the entire sense of the testimony of the deceased witness, in the very words of the witness, but that he could not now say, that he had any distinct recollection of the words of the witness, aside from his minutes. The defendant objected to this evidence ; but the court permitted the justice to state his minutes to the jury,

The defendant requested the court to charge the jury, that the defendant could only be made liable in this action as keeper of the dog ; that he could not be made liable as such, unless he were the actual keeper of the dog at the time he bit the plaintiff; that if the dog were taken from the defendant by his father, by the consent of the defendant, and kept for three or four weeks before the plaintiff was bitten, as the testimony tended to prove, the plaintiff could not recover in this suit, although the defendant had called the dog his.

But the court instructed the jury, that, if they believed the testimony of the defendant's father, the plaintiff could not recover ; but that, if, as between the defendant and his father, the dog was the defendant's, the father having surrendered his right to the defendant, and, at the time the plaintiff was bitten, the defendant had a right to the control of the dog, and he was only temporarily and casually out of his actual custody, as any one's dog might be at a neighbor's house, and the defendant's father, as between them, had no right to any custody and control of the dog, the defendant was liable in this action ; and that, if the defendant's father put the dog into the defendant's hands for the purpose of keeping him from being attached on his debts, in the manner intimated by the witness, it would not excuse the defendant from his liability in this action,

Verdict for plaintiff. Exceptions by defendant.

*Tracy & Converse* for defendant.

1. ·The testimony of the justice was improperly. admitted. He could not say, that· he had written the language of the witness, as far as he had gone ; but he admitted, that he had not written all he said in chief, and the cross examination was entirely omitted. To allow the witness to decide, that he has written upon his minutes " *all that was material*," allows him to· decide the whole case. Upon the question, whether the precise language of the witness must be proved, we are aware of a conflict of authority ; but the affirmative seems to us the safer doctrine. *Rex* v. *Jolliffe*, 4 T. R. 290. 1 Phil. Ev. 215. 18 Pick. 435.· *Wilbur* v. *Selden*, 6 Cow. 165. *United States* v. *Wood*, 3 Wash. C. C. 240. And we believe no reputable authority can be found, which does not require at least the substance of the whole testimony and the cross examination.

2. The instructions to the jury were incorrect. The defendant is declared against as *keeper ;* and to say, that he is liable for the mischief of an animal, of which he is neither the *owner*, or *keeper*, is absurd. 1 Chit. Pl. 73. 1 Saund. R. 27. The dog was returned to the owner several weeks before he did the mischief, and was in the custody of the owner at the time, and he might have been returned by the defendant for the sole reason that he was turbulent. ·

*S. Fullam* for plaintiff.

1. The testimony of the magistrate was properly admitted, and comes within the decision in the case of *State* v. *Hooker*, 17 Vt, 658. Greenl. Ev. §§ 195, 196.

2. The question, whether the defendant had the actual control of the dog, at the time the plaintiff was bitten, was properly submitted to the jury and their finding cannot be revised.

The opinion of the court was delivered by

REDFIELD, J. The only question, which it is deemed of importance to discuss much in detail, is that in regard to the mode of identifying the testimony of a deceased witness. There has been a good deal of discussion in the books, on this subject, and it is one not entirely free from difficulty. The rule laid down in *State* v. *Hooker*, 17 Vt. 658, is perhaps as liberal, as could be desired,— more so, than will be found in any of the English cases. All the

witness could there state, of the testimony of the deceased witness, was the *substance* of the testimony, *in his own words*, including both the direct and cross examination. Under that rule there could be no doubt of the correctness of the decision below.

The testimony in the present case is, what it seems to us the reason of the rule justly requires, and nothing more, that is, that the testimony of the deceased witness, or the *substance* of the testimony, should be given, *in the very words of the deceased witness*. This is the rule required in proving the words spoken in slander, libel, and on indictments for perjury; and substantially the same rule is required in giving evidence of the declarations and admissions of a party made out of court. But, no doubt, evidence must, in many case, be received, which falls short of this. But unless, upon the whole, the jury, or the triers of the fact, are satisfied, that they get all the *substance* of the deceased witness' testimony, in his *very words*, it should not be regarded as of any force. And this must extend to the cross examination as well as the direct evidence.

There is good reason, perhaps, for requiring more strictness, in regard to the testimony of a deceased witness, than in regard to original evidence. There is always more or less uncertainty, when the testimony comes from the original witness. But when upon this uncertainty we found another, the doubt is increased, not in a simple arithmetical proportion, but in a geometrical ratio. The hazard, in regard to the truth, increases, not in the simple ratio of the numbers of the witnesses, through whose testimony we receive that of the deceased witness, but in the ratio of the squares of the numbers.

This subject does not appear, very clearly, to have much occupied the attention of the English courts. The testimony of deceased witnesses, until within the last fifty years, perhaps, was only given in evidence, at a subsequent trial, when it had been taken down in the form of a deposition. This is the case in *Rex* v. *Payne*, 1 Ld. Raym. 729,—reported more at length, and far more intelligibly, in 5 Mod. 163,—*S. C.*, 2 Salk. 281, 417, 418. That was the case of a deposition, taken in a preliminary examination before a magistrate, when the accused was not present and had no opportunity for cross examination, and was rejected on that ground.

Buller's Nisi Prius is, perhaps, as good evidence, as any book can

be, of the state of the law upon any given subject, *at the time he wrote.* He alludes to this subject, pp. 142, 143, but in such a manner, as to leave great doubt how the law then stood. Depositions taken before the coroner were to be used, " For the coroner is an officer appointed on behalf of the public ;" and by certain statutes, examinations before justices of the peace, in cases of felony, are to be used, against the accused, " if the witnesses be dead." This is no doubt the *ovum* from which the practice proceeded. Justice Buller farther says, " Another way of perpetuating the testimony of a person deceased, analogous to this of giving depositions in evidence, *is by giving the verdict in evidence and the oath of the party deceased.*" He says farther, " it must be between the same parties,"—thus showing very clearly, that it was not then fully settled, that it must be the *very same cause,* which is now abundantly settled, in practice, certainly.

No question seems thus early to have arisen, whether the testimony of the deceased witness must be given in his very words. It rather seems to have been, for a long time, taken for granted, that it must be so. For in *Rex* v. *Jolliffe,* 4 T. R. 291, Ld. KENYON, Ch. J., in giving judgment, alludes to this subject, *arguendo,* citing the instance of Ld. Palmerston's evidence, which was offered in a case at bar, saying, " But as the person, who wished to give Ld. Palmerston's evidence, could not undertake to give his words, but merely to swear to the effect of them, he was rejected." He seems to entertain no doubt, that such was then the acknowledged rule upon the subject. It seems to have been nothing more or less, than giving in evidence *a former deposition.* This, like the proof of any other writing, should be done by producing the original, where that can be done, or, in default of that, a copy, or lastly, by oral proof of the contents, which, unless it *substantially* report the *very words,* must of necessity be very inadequate proof.

But as much testimony, given *viva voce,* is never reduced to writing, and, when it is, is done by short hand writers, and very imperfectly done, it becomes, in practice, necessary to somewhat relax the rule. Accordingly this has been done, both in England and America. See *Mayor of Doncaster* v. *Day,* 3 Taunt. 261 ; *Cornell* v. *Green,* 10 S. & R. 16; and numerous American cases, referred to in Greenleaf's Cases Overruled, &c. 436. In 1 Stark. Ev. 327,

328, and note (N,) it is very distinctly declared, that it is sufficient, where the witness, in rehearsing the testimony of one indicted for perjury, committed on a former hearing, said " he could not swear he had stated all which fell from the prisoner, but that he said nothing to qualify it." *Rowley's Case,* 1 R. & M. 111; and it is argued, that the same degree of certainty is sufficient, in rehearsing the testimony of a deceased witness.

In *Tod* v. *Winchelsea,* 3 Car. & P. 387, it was allowed to give the *substance* of what a deceased witness had deposed on a former trial, from the short hand notes of one of the officers of court. Phillips, in his treatise on Evidence, vol. 1, pp. 215, 274, seems to countenance the ancient strictness, but not to the extent that it should of necessity be testimony given in the very same cause, but only in an action between the same parties, where the same point is involved. But however that may be, the practice certainly is, not to extend the rule beyond the very same case. And the rule, as to the degree of strictness required, in proving the very words of the witness, seems correctly laid down in *Glass* v. *Beach,* 5 Vt. 175, by BAYLIES, J. " It may be given in evidence, either from the judge's notes, or by the notes, which have been taken by any other person, who will swear to their accuracy; or the former evidence may be proved by any person, who will swear, from his memory, to its having been given." *Mayor of Doncaster* v. *Day, ub. sup.* This is substantially the rule followed in the county court, in this case.

The charge, we think, was as favorable to the defendant, as he had any just grounds to claim.  Judgment affirmed.