IRA WHITCHER, *Administrator of* NEWHALL PIKE *v.* GEORGE A. MOREY.

*Statute of Frauds. Deed. License. Verbal Contract to Convey Land. Evidence. Deposition. Deceased Witness.*

A verbal contract for the purchase and future conveyance of real estate, followed by a payment and securing of the price as agreed, is not of itself sufficient to authorize or license the proposed purchaser to enter upon the land, even after the time has elapsed within which the owner of the land was to give his deed.

A verbal contract for a future conveyance of land, though followed by payment of the purchase money, is, until the deed is given, inoperative to pass any interest legal or equitable in the land or right to enter upon it, and, unconnected with other facts, is not even evidence of a permission to enter upon the land.

C. bargained verbally with M. for a lot of wood land, C. to deliver part of the purchase money, and his notes and a mortgage for the rest to a third person at a specified time, and M. to leave a deed with the same person to be taken by C. at the same time. C. paid and delivered his notes and a mortgage according to agreement. M. left no deed for C., and ultimately refused to convey. The jury finding that M. gave C. no permission to enter upon the land, and he having entered and peeled bark, *it is held*, that the above facts were no warrant to C. to enter upon the land, and the bark he peeled was M.'s property, and could not be held by the plaintiff who bought it of C.

Whitcher, Adm'r, *v.* Morey.

A party is not estopped from explaining how he understood the oath he took on signing a bill in chancery which is afterwards read in evidence against him.

It appearing that a law partner of the master who took a deposition, acted, at the taking, as counsel on behalf of one of the parties, the court will not, in absence of proof, presume that their partnership extended to matters of this nature.

Testimony given on a former trial by a witness, since deceased, may be reproduced, from minutes which were then taken, and which are proven to have been "full and taken with substantial correctness."

If the original minutes are shown to be lost, a copy of them, proven to be a correct transcript, may be read.

It is not important that the person who swears to the minutes should profess to testify from recollection of the testimony, or be able to so refresh his memory by reading the minutes as to recall the testimony to his mind. If he can swear that his minutes of the evidence given by the deceased witness, are full and substantially correct, they may be read to the jury.

The party proposed to read to the jury as evidence a copy taken by another person of the judge's notes, of the testimony of one C., as given upon a former trial, C. having deceased; and, at the same time, proposed to prove that the original minutes were lost and the copy was correct, and by the deposition of the Judge that the original minutes were full, and taken with substantial correctness. *Held*, that upon the proof offered the party was entitled to read the copy to the jury.

THIS was an action of trover for a quantity of hemlock bark; about thirty.seven or thirty-eight cords. Plea, the general issue, and trial by jury at the June Term, 1866, PECK, J., presiding.

The plaintiff gave evidence tending to prove that in the spring of 1855, one Benjamin Comings, who was engaged in sending hemlock bark and coal to market, made a verbal contract with the defendant for a lot of timber land in the town of Fairlee; that the deed for the lot of land at the time of making the contract was not made and delivered by the defendant; that the contract was, that the said Comings was to pay in cash $50., and give two notes, one for $150. payable the 1st of April, 1856, and one for $164. payable the 1st day of April, 1857, and give a mortgage of the same land to secure the payment of the same notes; that the terms of the contract were completed on or about the 5th of June, 1855; that the only object of Comings in buying the lot was to get the hemlock bark on the same, and convert the wood into lumber and coal, and that it was then agreed that, as the defendant could not make his deed that day,

Comings might make his two notes, and his mortgage to secure them, and leave the notes and mortgage, and fifty dollars, with the town clerk, and the defendant, as soon as convenient, should make his deed of the lot and leave the same with the town clerk, for Comings, and when he should so leave the deed with the town clerk, the defendant might take the fifty dollars in cash, and the notes and mortgage from the town clerk; that Comings, thereupon, on the same day, did make his notes and mortgage, and deposited them, together with $50. in cash with the town clerk for the defendant, to be delivered to the defendant when the defendant should leave his deed; and thereupon Comings entered upon said lot of land, and cut the timber and peeled the bark, in question, upon the same, and that what he cut and peeled was all done within a few days after Comings left the money and papers at the town clerk's office; that the defendant did not make his deed of the same, and never has made the same, and, tending to show that he never notified Comings that he should not deed the lot till after the timber was cut and the bark peeled.

The plaintiff further gave evidence tending to prove that the bark thus cut and peeled upon said lot, remained on the same, till taken away by the defendant some time in December after; that in the month of October of same year, Comings sold the bark, together with other bark which he had on hand, cut on other land not belonging to the defendant, to Newhall Pike, the plaintiff's intestate, amounting in all to about two hundred and fifty cords, and received pay of Pike for the same; that some time in the month of November of the same year, the defendant had not made and deposited his deed with the town clerk as agreed upon, and Comings being in failing circumstances, withdrew the fifty dollars from the town clerk, and ever after retained it. The plaintiff further gave evidence tending to show, that when Pike bought said bark of Comings, the same was not removed by Pike, and there was no change of possession; that Coming's creditors were sueing him, and to secure Pike, Comings had the bark attached on a writ in Pike's favor, and Comings confessed judgment and the bark was sold on execution and bid off by Pike, under an agreement between him and Comings that Pike should pay only the contract price, whatever his

bid might be ; that the only object in the sale was to protect the bark in Pike till he could take possession of it ; the bark was never removed by the officer or Pike,—that is the thirty-seven or thirty-eight cords peeled on the lot in question ; the sale was made by the sheriff on the terms, that the buyer should take it where it then was ; at the time of the execution sale, the defendant had removed some of it to his house, and some of it to the highway."

The plaintiff's testimony further tended to show, that the object and purpose of Comings in buying said lot of land, was to take immediate possession of the same, for the purpose of peeling the bark that season, which was known and understood by the defendant, and that he entered and took possession with the knowledge and consent of the defendant, but there was no direct or express evidence of such knowledge or consent.

It did not appear from any testimony in the case that Pike, at the time he bought the bark in October, had any knowledge that the defendant pretended to have any claim to the bark ; but it did appear that when Pike agreed to, and did bid off the bark, he and Comings and the officer knew that this bark was cut and peeled on the defendant's land, and that the defendant claimed it. It also appeared that this bark that Pike bid off, exclusive of the thirty-seven or thirty-eight cords, was more than sufficient to pay all his execution and costs.

This case was tried at the June Term of Orange county court, 1860, and Judge BARRETT was the presiding judge, and verdict of the jury was taken. Comings on that occasion was a witness on the part of the plaintiff and testified, and subsequent to said trial the defendant petitioned the supreme court for a new trial, and obtained Judge BARRETT's minutes of the testimony to be used on the hearing of said petition. The plaintiff's counsel, on that occasion, took a copy of said minutes, and has retained them ever since. Since the trial in 1860, and soon after, Comings died. At the present trial, for the purpose of proving what Comings swore to on the former trial, the deposition of Judge BARRETT, with what was claimed to be a copy of his minutes of the testimony of Comings was offered ; before offering said deposition, it was offered to be shown that the original

minutes of Judge BARRETT were lost, and could not be found, and that the copy attached to his deposition was a true copy, made by the plaintiff's counsel, but never compared with the original by Judge BARRETT.

The counsel for the defendant objected to said deposition because a copy of the minutes of Judge BARRETT could not be substituted for the original, and that if it were the original it would not be admissible, and could not be read as evidence, and also that Judge BARRETT's statements in his deposition were not sufficient to warrant the reading of the original minutes, or the annexed copy, as evidence. The court sustained the objection and excluded the deposition, and said copy thereto annexed,—to which the counsel for the plaintiff excepted.

The plaintiff showed the value of the bark, and after introducing Mr. Dewey, who testified to what Comings testified on the trial referred to in Judge BARRETT's deposition, Dewey being at that time counsel for the plaintiff, in this case, the plaintiff rested his case.

The defendant, to sustain the issue on his part, introduced evidence tending to deny the agreement in respect to said land as proved by the plaintiff.

In the course of the trial the plaintiff introduced as evidence a bill in chancery, signed and sworn to by the defendant, for the purpose of showing that in said bill the defendant had admitted the facts in relation to taking possession of said lot by Comings, to be as the plaintiff claimed. Said bill was brought by the defendant, after the plaintiff had obtained a verdict against him, at the June Term, 1866, to enjoin the judgment, and setting up some sort of equitable defence which he could not make at law.

The defendant offered to prove by Mr. Ormsby, who drew the bill, that he drew it in great haste, at Chelsea, in the absence of the orator, during the session of court, June Term, 1860; that in drawing said bill, although the bill, upon the face of it, purported to state the facts as the orator understood them to be, still it was not so intended, but was intended to state facts as they had been established by the verdict, and that the orator objected to signing and swearing to the bill because it was not a true statement of the facts, and that

he induced him to sign and swear to it by telling him that the inten-
tion of the bill was to set forth the facts as they have been estab-
lished by the verdict, and by telling him that he would so amend the
oath by adding that the facts were true as established by the verdict,
and that thereupon the orator signed and swore to the bill by quali-
fying the oath as above stated ; the certificate of the oath shows that
the oath was qualified as above stated.

To the admission of this testimony the plaintiff objected, but the
court overruled the objection and admitted the testimony,—to the
admission of which testimony the plaintiff excepted.

The defendant also offered to prove substantially the same facts,
as to what transpired when the bill was sworn to by the defendant,
to which the plaintiff objected, but the court overruled the objection
and admitted the testimony,—to which the plaintiff excepted.

In the course of the trial the plaintiff introduced evidence tending
to prove, that sometime in the month of June, 1855, and after Com-
ings had left his notes and mortgage and money with the town clerk,
and after he had commenced cutting and peeling the bark, he,
Comings, procured two of the defendant's neighbors, a Mr. McLane
and Mr. Pane, to go with him to the defendant, by representing to
them that he wished to have them, if the defendant would consent to
it, hear the statements of the parties and decide whether the defend-
ant was under obligation to deed said lot to Comings ; that they with
Comings did thereupon go to the defendant's, into the field where the
defendant was at work, and after some statements and conversation
in relation to the matter in controversy, they parted without agreeing
to submit the matter, and without any award, or decision of any kind
being made. As to what transpired in this field on this occasion,
the plaintiff had given evidence by said Dewey, what Comings testi-
fied on said trial, of this case, tending to show that on that occasion
in the field, in presence of McLane, Paine and the defendant, Com-
ings, among other statements, read a memorandum, which he had
drawn up, which he claimed to contain the facts in relation to the
trade, similar to what the plaintiff claims on this trial, and that the
defendant did not then say anything denying the truth of it, and the
plaintiff had put that memorandum in evidence on this trial to show

that a verbal contract for the land had been made between the defendant and Comings, and the terms of it, and also had introduced McLane's testimony to the same effect, or similar.

The defendant offered to prove by said Paine, that a few days after this interview, and before Pike had made any purchase of this bark of Comings, Comings came to him and asked him if he supposed Morey knew for what purpose McLane and Paine were called together? that Paine told him that he did not; that he had not heard the defendant say anything about it; that Comings asked him if he knew? and that Paine told him he did not, and that Comings then said to Paine that it was for the purpose of making witnesses to the bargain for the land.

To the admission of this testimony, as being conversation and statements between third parties, in the absence of the plaintiff, and as being irrelevant, the plaintiff objected; but the court overruled the objection and admitted the testimony,—to which the plaintiff excepted.

The defendant offered the deposition of Samuel P. Morey; to the admission of which the plaintiff objected, for the reason that it had no revenue stamp on it. The court overruled the objection and admitted the deposition, upon the ground that the law of congress did not require a stamp, and upon the ground that if it did, the deposition was admissible unless the omission to stamp it was with intent to defraud the government of the revenue, and the court were satisfied there was no such fraudulent intent,—to which the plaintiff excepted.

The defendant also offered the depositions of Lewis Hall and Peter Lundry.

The plaintiff proved that in the taking of said depositions J. L. Edwards acted as the attorney of the defendant and examined the witnesses, and that the depositions were taken and written by Jerry E. Dickerman, as master in chancery, and that at the time of taking them, Edwards & Dickerman were partners as lawyers in the practice of the law, and doing business in the same office in which the depositions were taken. On the day the depositions were taken, Mr. Leslie appeared there as counsel for the plaintiff in taking the

depositions, and for that reason the defendant employed Edwards to assist on his part; up to this time the defendant had employed no counsel for that purpose, and did not intend to have any. The defendant did not know that Dickerman & Edwards were partners. The defendant paid to Dickerman his legal fees as a magistrate, or master in chancery for taking the depositions, and to Edwards separately his fees as counsel or attorney in taking them. There was no evidence that Dickerman & Edwards were partners, except said Leslie testified that after the depositions were taken, he talked with Dickerman an hour or so and saw their docket, and in the course of the conversation, understood they, Edwards & Dickerman, were partners in law business, but that he did not learn what was the extent of the partnership, or what it embraced; and said Leslie or another witness testified he had seen Dickerman & Edwards, or Edwards & Dickerman, entered as counsel on the county court docket, in Caledonia county, in some cases. The court found that there was some kind of a partnership between them as lawyers, but did find that it embraced this business, or that Edwards had any interest in Dickerman's services, or fees in this matter, or that Dickerman had any interest in the services or fees of Edwards in the transaction.

The plaintiff thereupon objected to said depositions on the ground that they came within the spirit, meaning and intent of the statute, which provides that no agent, attorney, or person interested in any cause shall write or draw up the deposition of any witness, to be used in such case, but the court overruled the objections,—to which the plaintiff excepted.

The court told the jury, that the mere fact that the defendant and Comings made a verbal agreement for the sale and purchase of the lot, by which Comings was to deposit the money, notes and mortgage with the town clerk, to be delivered to the defendant when the defendant delivered his deed of the lot to the town clerk for Comings, which the defendant, by the agreement was to do, would not necessarily, of itself, as matter of law, authorize Comings to go on and cut and peel the bark, although the jury might find that Comings had deposited with the town clerk such notes, money and mortgage, required on his part by the contract. That such valid agreement,

and such performance on the part of Comings was to be considered with the other evidence in the case as bearing upon the question, whether there was in fact such authority or consent on the part of the defendant to Comings to enter upon the lot, or cut and peel the bark.

To this part of the charge as given the plaintiff excepted.

The jury returned a verdict for the defendant.

*Leslie & Rogers* and *Wm. Hebard*, for the plaintiff.

*R. McKOrmsby*, for the defendant.

The opinion of the court was delivered by

STEELE, J.   I.   The defendant, among other things, detailed in the exceptions, claimed that the hemlock bark, in dispute, was his property, because produced by his land.   The plaintiff does not question the defendant's legal title to the lot of land, from which the bark was cut, but insists that Benjamin Comings, who sold the bark to the plaintiff, had a right to peel and appropriate bark from the trees on this land, because Comings and the defendant had verbally agreed upon and bargained for the sale and conveyance of the lot, from the defendant to Comings, and Comings had, on his part, performed the terms of the agreement, and delivered the purchase money, notes and mortgage into the hands of a third person, as directed by the defendant.   The defendant on his part neglected to leave a deed for Comings, with this third person as he had agreed, and ultimately refused to convey.   The defendant does not admit the agreement, and the performance on the part of Comings, as claimed, but the court told the jury that even if they found these facts in favor of the plaintiff, still this verbal agreement, for the sale and purchase of the lot, connected with the performance of the agreement on the part of Comings only, would not of itself, as a matter of law, authorize Comings, the purchaser, to enter upon the land, and cut or peel the bark.   This is the proposition which comes here for revision, and is the only portion of the charge to which the plaintiff objects.   The issue of fact, which arose upon the evidence, relating

to a permision to enter upon the land, was submitted to the jury by the court in a manner satisfactory to the plaintiff's views of the law, the court ruling, that the fact, if found, of this verbal bargain, followed by the performance on Comings part, might, with other things, be evidence to be considered upon the issue of a license, or permission.  The question, therefore, on this branch of the case, is simply whether a verbal contract for the purchase and future conveyance of real estate, followed by a payment, and securing of the price, according to the agreement, is of itself, as a matter of law, sufficient to authorize the purchaser to enter upon the possession and enjoyment of the land to be conveyed.  If it is sufficient, it must either be upon the ground that it confers upon the vendee an equitable interest in the land, with a consequent right to the immediate use of it, or upon the ground that without conferring any interest in the land it amounts, in law, to a permission or license to enter upon and enjoy it.  The bargain is but a promise.  It vests in Comings no interest in the real estate.  He gets by the agreement only the promise of an interest.  Nor does the *payment* operate to invest him with any title.  His equitable and legal claim is for the money paid, if the land is not conveyed.  It has been held, that when such a verbal purchase and payment is followed by possession, with the consent of the vendor, equity will treat the case as without the statute of frauds, and will decree a conveyance.  The rule has never been extended to cases where the possession has been taken without the consent of the vendor, and the return of the money can be had by the purchaser.  The vendee's claim is not strengthened either at law or equity by such possession.  It is possible that there might be peculiar circumstances, which would demand equitable relief, but ordinarily the recovery of the money paid under such an invalid contract is adequate relief.  If a conveyance would be decreed in all cases of a parol purchase and payment, the statute, requiring contracts for real estate to be in writing, would be substantially nugatory.  Nor can a verbal agreement to deed, even though made upon consideration, amount, as a matter of law, to a permission to enter upon the possession of the land before it is conveyed.  The agreement to convey does not necessarily imply that any entry or right of entry is

contemplated by either party, except as the incident of the trans-
fer of title, which will carry with it the right to enter. The
promise, as we have seen, vests no right in the land, which is to be
the subject of the future grant, and it `cannot be assumed, as a mat-
ter of law, that the parties intended by the promise more than its
legal effect. It may be so connected with other statements, and made
under such circumstances, as to amount to a permission to enter
before the conveyance is made. Whether such was the intention
and understanding of the parties is a question of fact for the jury,
and was so treated by the court. The fact relied on by the plaintiff,
that he intended to operate on the land immediately, and that the
defendant knew his wish does not convert this into a question of law.
That fact, if found, was only evidence with others upon the question
of the understanding of the parties as to the permission. Nothing
more is required than the example of this controversy, now for the
third time in this court, having been the subject of two jury trials,
and one suit in chancery, to demonstrate that it is the business duty,
as well as legal right of parties dealing in real estate, to treat the
whole matter as incomplete, and as conferring no right to the land
until the terms of their contract, the mode of payment, the amount,
and nature of the security are definitely settled, and evidenced as the
law requires. It certainly is not to be presumed, *as a matter of law*,
that the vendor has authorized possession before his conveyance has
been made, and its terms approved and accepted, merely because he
has promised that he will convey. Indeed that fact, standing alone,
would be not even *evidence* of a permission or license to enter upon
the land. The cases cited, with reference to a sale of growing trees,
and an implied license to enter upon the land to remove them, do not
apply to this case. Such cases are sales *in presenti*, not mere
agreements to sell. They are not intended by the parties to be made
a matter of deed, and by their terms contemplate an entry upon the
land without further conveyance if at all; while in this case a deed
was to evidence the consummation of the contract, and the right of
possession is part of the subject matter, which passed by deed.
Here the giving of the deed was something more, which the parties
understood remained to be done, and while it remained undone, the

sale was incomplete, and no rights to the subject of the contemplated deed passed. We think the exception to the instructions of the court to the jury is not well taken.

II. Several questions are reserved with relation to the admission and rejection of testimony. The testimony explaining the circumstances and qualifications under which the defendant was led to sign and swear to his bill in chancery, was not intended to contradict his oath, but to state its original meaning. Though it would have been far better to have taken time to draw the bill correctly, and so as to avoid the necessity of such an explanation, we are not prepared to say, that the party is so committed by the bill, as to be estopped from explaining it, and we think the evidence was properly received. The depositions taken by Mr. Dickerman, as a master in chancery, are objected to, because Mr. Edwards, the partner of Mr. Dickerman, acted as counsel for the defendant in taking them. It is not necessary to say, what would be the decision of the court, if the case showed that the master and the attorney, by the terms of their partnership, shared each other's fees, for the evidence entirely failed to disclose the nature or extent of their partnership, and we cannot presume that it covered business of this nature. The objection to the depositions as being unstamped, we understand, is not relied on, the omission of the stamps being unaccompanied with any fraudulent design. The testimony from Paine, which was received against objection, was, we think, clearly admissible, as connected with the testimony of Comings, repeated by Dewey.

III. Comings, who had been a witness for the plaintiff on a former jury trial of the cause, deceased before the trial now under revision. The plaintiff was at liberty to reproduce his testimony if he was able to do so in a proper manner. For that purpose the plaintiff proposed to read a copy of the minutes of Comings' testimony, as taken by the judge, who presided at the former trial. The original minutes being lost, and the copy being an accurate transcript, as the plaintiff offered to show, the copy would doubtless be admissible, provided the original would have been if produced. The original minutes would not themselves have been receivable, unaccompanied by proper proof of their correctness.

The judge's notes of the testimony are taken for his own guidance, and are not so required of him as part of his official duty, as to make them admissible in evidence without the usual proof of their accuracy.    To make this proof the plaintiff offered the deposition of Judge BARRETT, who took them, in which the Judge states, that he took "full minutes of the testimony of Comings with substantial correctness."    Is this a sufficient verification of their completeness and accuracy to warrant their being read to the jury?    There being no question upon any other ground of the admissibility of the deposition and the plaintiff offering to prove that the original minutes were lost, and that the copy was a correct transcript, the question stands precisely as it would, if the judge had produced the original minutes, and had himself gone upon the witness stand and testified that they were "full, and taken with substantial correctness."    A more complete verification of minutes taken upon a trial could seldom be made.    A prudent man would not be likely to profess to a greater accuracy in taking notes of the evidence.    If the witness had claimed to be able to repeat from memory the full testimony of the deceased witness, with substantial correctness, we think he should clearly have been allowed to do so.    A higher degree of certainty would not be required in proving the words, if they were the subject of an indictment for perjury, or of a declaration for slander, and in each of these cases, there is reason for greater strictness than in this case.    This degree of certainty has been often held sufficient in England, and in other states, as well as by our own court.    *Todd* v. *Winchelson*, 3 C. & P., 387 ; 1 Green. Ev., p. 218, citing *Corvell* v. *Green*, 10 Serg.& R. 14, 16, and many other cases.    In *State* v. *Hooker*, 17 Vt. 662–70, the testimony of the deceased witness was proved by the justice, who stated, "that he could not give the precise language of the witness, but only the substance of his testimony upon the examination in chief, and the cross-examination," and this was held sufficient certainty.    In *Marsh* v. *Jones*, 21 Vt. 382, the justice, whose evidence was held to have been properly received, professed to give the substance of the testimony of the deceased witness in his very words, but could give none of the cross examination, and was able to state only from his habit in taking minutes, that the cross-

examination "did not qualify the testimony in chief." The rule always requiring the testimony in cross-examination, as well as in examination in chief, it certainly cannot be said, that the cross-examination was more than *substantially* given in this case. In *Downer* v. *Rowell,* 24 Vt. 344, the attorney, who was held to have been properly examined as to the previous testimony of a deceased witness, professed to do no more than to give "the substance of the testimony." To require a greater certainty would in most cases amount to excluding the party from the benefit of the former testimony of the deceased witness, and would be in direct conflict with the authority of the later English and American decisions, and the three well considered cases of our own court, which have been referred to. But it is claimed that even if this degree of certainty is sufficient, that the minutes should not have been read to the jury, but should have been used only to refresh the memory of the party who took them, and he should then have testified from his recollection, and that, whether or not they may be properly read to the jury, if the witness testifies that on examination of them his mind recalls the testimony, they cannot be read on mere proof that they were taken correctly, without proof that the testimony of the deceased is remembered by the judge at all. This somewhat fanciful distinction is supported by some authority, but by none in Vermont. In *Glass* v. *Beach,* 5 Vt. 173, *Marsh* v. *Jones,* 21 Vt. 378, and *Downer* v. *Rowell,* 24 Vt. 344, the reading of the minutes to the jury was approved, and in the first case the minutes were not made upon the trial, nor before the death of the witness, and it does not appear in the case that the justice, who made them retained at the time they were used, any recollection of the testimony. In the second of these cases, the justice expressly stated, that "he could not say that he had any distinct recollection of the words of the witness, aside from his minutes;" and in the third case the witness said, that he could not state "the substance" of the testimony on the cross-examination, "without reading from his minutes," and in this last case the court say, that "the consideration, that the witness could not swear from memory, is not at present regarded as important. All that is required is, that the witness shall be able to state that the memorandum is cor-

rect. He may then read it as well as repeat it. The old rule, that the witness must be able to swear from memory, is pretty much exploded." Upon the reason and authority of these cases, we think it very clear that the plaintiff was entitled to the benefit of the former testimony of Comings from the proven copy of the Judge's minutes which were lost. In *Church* v. *Phillips*, 6 E. C. L., p. 409, it is said, that if the witness cannot swear to the fact from recollection, farther than as finding it entered in a book or paper, the original book or paper must be produced, but in that case, and in those upon which it relies, no offer was made to prove the loss of the original, or any fact to excuse its non-production, and the decision was clearly right as merely calling for the best evidence. The object in the case before us was to reproduce the testimony of the deceased witness, Comings, and that could quite as satisfactorily be done by a memorandum, proven to be substantially correct, as by the uncertain memory of a witness, who attempts to detail it.

For the error in rejecting this testimony, the judgment must be reversed and the cause remanded.