## J. M. EARL AND WIFE *v.* JACKSON TUPPER.

### *Survivorship of Action. Witness. Evidence. Damages. Pleading.*

At common law, an action in the name of husband and wife, for injuries to the wife, does not, on her decease, survive to the husband ; but, by our statute, such action survives to her administrator.

What a deceased party to a suit testified on a former trial may be shown, by competent evidence, on a subsequent trial; and the attorney of such party, who took substantially correct minutes of the testimony, and, in many instances, the exact language of the party, is a competent witness for that purpose; and the minutes of the presiding judge need not be produced, or their non-production accounted for.

When it is important to show the bodily condition of a person at a certain time, what such person says to an examining physician at such time, about the then nature, symptoms, and effects of the malady then upon her, is proper evidence.

When the condition and health of a woman during some period of her pregnancy, are material to be shown, the fact that the child had spasms, or convulsions, at birth, may be weighed with other circumstances in the case bearing upon the condition of the mother after the time her condition became important, for the purpose of determining what her condition, while it was important, in fact was.

The professional opinion of a medical expert, based upon hyphothetical facts, may be received in evidence before proof of any, or only a part, of the facts supposed, if the court is satisfied that the party in good faith intends to offer proof of such facts.

In an action by the administrator of the wife, for injuries to her, no damages can be recovered for any loss of the labor of the intestate that belonged to her husband.

In awarding exemplary damages, the jury must be governed wholly by the malice or wantonness of the defendant, as shown by the conduct they find him liable for in the action. The expenses of the plaintiff for counsel fees, and other trouble in· the suit, not taxable costs, are not a proper element of such damages.

An administrator, in an action for injuries to his intestate, may, in a case otherwise proper for their allowance, recover exemplary damages.

When several acts of violence to a person are committed within a short space of time, and at places a little distant from each other, and they are so connected that each, to some extent, characterizes the others, and all together, they constitute a series of assaults and batteries, which may be declared for in one count, with proper allegations.

TRESPASS for assault and battery on the plaintiff, Mrs. Earl. Plea, the general issue, and trial by jury, September term, 1871, ROYCE, J., presiding.

The first count in the declaration alleged,

"That the said defendant, on the 26th day of February, A. D. 1867, with force and arms, assaulted the said Marinda Earl, then and still being the wife of the said James M. Earl, to wit, at Bakersfield aforesaid, and then and there, with a certain stick, or axe, and with his fist, hand, and elbow, gave and struck the said Marinda a great many violent blows and strokes on and about divers parts of her body; and also, then and there, with great force and violence, pushed and pulled her about; by means of which said several premises, the said Marinda was greatly hurt, bruised, wounded, and internally injured, being then and there with child, and became and was sick, sore, lame, and disordered, and confined to her bed, and has since so continued to the time of the bringing of this writ, and still is sick, sore, lame, and disordered, and confined to her bed," &c.

The plaintiff offered H. C. Adams, Esq., as a witness, to prove what Mrs. Earl testified to on a former trial of this case, she having since deceased. Mr. Adams testified that he was counsel for the plaintiffs on the former trial, and took minutes of Mrs. Earl's testimony, and intended to take them substantially correct, and supposed he did; that he could not say that he took the exact words of the witness in every particular, but in many instances had no doubt he did, and presumed he could find words, phrases, and clauses, which he should believe were the exact language of the witness. The defendant offered to show that the judge presiding at said trial took minutes of Mrs. Earl's testimony. The defendant claimed that the statute permitting parties to be witnesses, did not embrace the common law rule of reproducing the testimony of deceased witnesses; and, that at all events, the rule requiring the best evidence to be produced, would require the production of the judge's minutes; and that the exact words of the witness must be testified to. The court

allowed Mr. Adams to read his minutes; to which, and to the admission of the testimony thus given, the defendant excepted.

It appeared, among other things, from the testimony of Mrs. Earl, as given by Mr. Adams, that, at the time of committing the acts complained of, the plaintiffs were living in a house leased of the defendant; that on the day alleged, she went to the east barn, about sixteen to eighteen rods from their house, where she heard difficulty between the defendant and her son, and started to enter the barn, when she and the defendant had some angry talk, and he shook an axe at her, and told her to stand back; that he came out into the barn-yard where she was, and snubbed her nose, and then smelt of his fingers; that defendant then went into the west barn, about 70 feet distant from the other barn, and she went and stood at a stable door of the same barn, about 110 feet from the other barn, and the defendant came out at the stable door, and struck her in the stomach and knocked her down, and as she fell, her heft was thrown from her right foot to her left, and her right foot came under her and wrenched her back; that as soon as she could, she started for the house, eight or ten rods distant, the defendant following her; that she entered the house and closed the door, and attempted to hold it against the defendant, but could not, and, turning to leave it, the door came open and hit her between the shoulders and knocked her on to the stove; that defendant passed her and asked her to go up stairs, but she would not, whereupon defendant struck her in her side, and went up stairs; that he came down and asked her to go up and look at a stove-pipe hole, but she refused, and he then forbid her to build a fire in the stove, and used the same indecent language to her he did at the barn. The words of the language were given. The language was indecent, but not threatening, and there was no evidence that the defendant used any threatening language during any part of the occurrences of that day. She further testified as follows: "Before he went away he said, 'When Earl gets home, I shall come over and put you all out—the old woman into the bargain.'" In another connection she testified that, "he said if I built a fire he should be after me." She also testified that she was about seven mouths advanced in

pregnancy at the time of the committing of the acts complained of; that in about an hour and a half thereafter, she was taken vomiting, and vomited blood, and had much pain in her back; that she vomited occasionally during the day; that in the morning she was in her usual good health; that in about a week she had spasms, and a difficulty commenced in her left limb and foot, which continued until her foot became contracted in the manner shown to the jury; that she had no such troubles before the injuries complained of. She further testified to having darting pains in her back and foot, and great difficulty in her spine, which continually grew worse, and that she was about forty-four years old. The defendant denied all the statements about the alleged assault and striking, and introduced the testimony of physicians who examined the body of Mrs. Earl after death, and of other persons having knowledge of the matters, tending to show that she had no such injury of her back as she testified to. All the material points in the case were disputed. The plaintiff introduced the deposition of Mrs. Fay, who testified to seeing Mrs. Earl within a few days after the affray, and examining her person; that there was a spot on her right side, swollen and inflamed, and that she complained of her right side troubling her. The witness also testified that Mrs. Earl had a child born in June of the same year, at the birth of which she was present. The deposition contained the following question, which was answered in the affirmative, to wit: "What was the condition of that child at birth; did it have spasms, or convulsions?" The defendant seasonably objected to the question and answer, but the court overruled the objection, and permitted the same to be read to the jury; to which the defendant excepted.

There was no evidence tending to show that the condition of the child at birth, in respect to spasms, or convulsions, had any tendency to show the condition of the mother, or the cause of any disease with which she was troubled. The plaintiff introduced Dr. Clark as a witness, a physician of experience, regularly graduated, who testified that he examined Mrs. Earl at the time of the former trial in October, 1869, and found her of sanguine-nervous temperament; found contraction of the muscles; one limb de-

formed, and smaller and less sensitive than the other ; a lateral curvature of the spine ; and a little more prominent spinal processes than was natural. The witness then proceeded to relate what Mrs. Earl told him at the time of such examination, about her pains and complaints, to which the defendant objected ; but the court overruled the objection ; to which the defendant excepted.

The plaintiff then proposed to ask the witness the following question ; to which the defendant objected.

" Suppose that you should be called to see a woman about forty years of age, whom you should find with a contraction of the foot, —the foot drawn around, with the limb in which the difficulty existed somewhat smaller than the other,—with a tenderness about the spine—the patient about six months advanced in pregnancy— that, being in her usual health, she had received a severe blow upon the stomach, from a person who used threatening language to her at the time ; that she had been thrown on to a stove with force from a door striking her between the shoulders ; that you should find that she had been struck a blow upon the groin, or upon the body ; that immediately afterwards, and within an hour or so, she commenced vomiting, and vomited blood ; that she suffered pain where this blow was struck upon her stomach and side —that she suffered pain in the small of her back—that in four or five days after, she commenced to have spasms—her limbs commenced contracting—and finally her foot became drawn around so that it was permanently contracted ; that prior to these supposed injuries, if she had never had any symptoms, or spasms, or contractions of the limb—what would you attribute the cause of these injuries to ? Further, that this supposed blow upon the stomach was of sufficient force to throw the person off her balance, and should at that time wrench that person's back—to what would you attribute the difficulty with the limb ?"

The court overruled the objection, and permitted the question to be put ; to which the defendant excepted. The witness answered that he " should consider the state of things as then existing, the result of the fracas, but not definite enough to form a pathological condition—a correct diagnosis of the case." There was no testimony tending to show any different symptoms from those above detailed. It appeared from the testimony of Dr. Clark, and from other medical experts, that fear, anger, and other

mental conditions of the patient, had a tendency to produce the results of which Mrs. Earl complained.

The defendant requested the court to charge the jury that the occurrences at the east barn, the west barn, and the house, as shown by the testimony, were several and distinct transactions, and that the plaintiff could recover for but one of them, under the first count in the declaration. The court refused to charge as requested, but charged that the plaintiff could recover under the first count for all the alleged injuries which they found proved ; to which the defendant excepted. The court further charged the jury that, if they found the loss of Mrs. Earl's limb was attributable to the injuries alleged, it was their duty to estimate what that was worth in dollars and cents as well as they could ; that the loss of a limb, in a pecuniary point of view, to a sickly woman, would be less valuable than the loss of a limb to a robust woman ; that if they should find her condition the result of the injuries complained of, yet, if she was in a feeble state of health before, and was liable to break down at any time, and they were going to estimate the loss to her husband in dollars and cents, they would estimate it less than they would if she was physically a healthy, robust woman, with as fair prospect of future life as other healthy, robust women ; that, ordinarily, the probable duration of life was an element in arriving at the pecuniary value of the loss of a limb, but in this case, that period was determined by the death of the party at a little more than three years from the alleged injuries ; that they should get at this pecuniary loss as well as they could. The court further charged that the pain and suffering endured by the party, were an element of damages. There was no qualification of the language of the charge above detailed, and the jury were not instructed what part of the pecuniary loss was recoverable in this action, and what would be properly recoverable by the husband in his separate action. On the subject of exemplary damages, the court told the jury, if they found the assault was committed in such manner and under such circumstances as to indicate malice, they were at liberty to give exemplary damages ; that the object of exemplary damages was twofold ; first, to compensate the party fully for his expense and

trouble about the case, which parties always have to incur, and which are not taxable costs, such as counsel fees, &c. ; secondly, for the purpose of example, as a sort of punishment to the offending party. To the whole charge on the subject of damages, the defendant excepted. Verdict for the plaintiff.

*H. S. Royce* and *Benton & Irish*, for the defendant.

There was error in permitting Mr. Adams to detail the former testimony of Mrs. Earl. *Marsh* v. *Jones*, 21 Vt. 378 ; 1 Greenl. Ev. §165, note ; *United States* v. *Wood*, 3 Wash. C. C. 440 ; *Commonwealth* v. *Richards*, 18 Pick. 434 ; *Warren* v. *Nichols*, 6 Met. 261. The judge's minutes were the best evidence, and should have been produced. This principle is not contravened by any Vermont case. In *Glass* v. *Beach*, 5 Vt. 172, *State* v. *Hooker*, 17 Vt. 658, and *Marsh* v. *Jones*, *supra*, the testimony of the deceased witnesses was reproduced by the magistrate who presided at the former trials. In *Downer* v. *Rowell*, 24 Vt. 344, the testimony of one of the counsel was taken, but he was counsel for the party adverse to the one who offered his evidence, and his client could not object to his bias. In *Whitcher* v. *Morey*, 39 Vt. 459, the minutes of the presiding judge were produced. In *Williams* v. *Willard*, 23 Vt. 376, the witness gave the very words of the former witness, and, for aught that appeared, was impartial.

2. It was error to allow Dr. Clark to testify to the statements of Mrs. Earl, made at his examination. 1 Phil. Ev. 191 ; *State* v. *Howard*, 32 Vt. 380, 404 ; *Kent* v. *Lincoln*, Ib. 591, 598 ; *Aveson* v. *Lord Kinnaird*, 6 East, 188.

There was error in allowing the question detailed to be put to Dr. Clark. *Fairchild et al.* v. *Bascom et al.* 35 Vt. 398.

The first count covers only one act of assault and battery.

From the charge, the jury were bound to give the same measure of damages as if the intestate had been a *feme sole*. This was error. Loss of capacity to labor, or of the value of services, could not be recovered in this action. *Barnes* v. *Hard*, 11 Mass. 59.

There was error in instructing the jury that they might find exemplary damages. Such damages do not survive to the admin-

istrator. Sedgw. on Dam. 532, n. ; *Lockier, Ex'r,* v. *Paterson et al.* 1 C. & K. 271.

The language of the charge was an express direction to the jury to find two fold damages under the head of exemplary damages ; first, to fully compensate the plaintiff for his expenses, taxable costs, and counsel fees ; second, to punish the defendant, and make an example of him. Allowing taxable costs in this connection, was clearly erroneous. *Platt* v. *Brown,* 30 Conn. 336. It was also erroneous to include counsel fees and other expenses as an element of damages. *R. & W. R. R. Co.* v. *Bank of Middlebury,* 32 Vt. 639, 651 ; *Park* v. *McDaniels,* 37 Vt. 594, 598 ; *Harris* v. *Eldred,* 42 Vt. 39, 40 ; *Linsley* v. *Bushnell,* 15 Conn. 225 ; Judge REDFIELD'S note to *Welch* v. *Durand,* 10 Am. L. Reg. 566 ; *Sinclair* v. *Eldred,* 4 Taunt. 7 ; *Jenkins et al.* v. *Biddulph,* 4 Bing. 160 ; *Grace* v. *Morgan,* 2 Bing. N. C. 534 ; *Arcambel* v. *Wiseman,* 3 Dall. 306 ; *Stimson* v. *Railroads,* 1 Wall. Jr. 164 ; *Good* v. *Meylin,* 8 Barr, 57 ; *Barnard* v. *Poor,* 21 Pick. ; *Lincoln* v. *S. S. & R. R. Co.* 23 Wend. 435 ; *St. Peter's Church* v. *Beach,* 26 Conn. 355 ; *Fairbanks* v. *Witter,* 18 Wis. 287 ; *Day* v. *Woodworth,* 13 Howard, 363 ; *Teese* v. *Huntington,* 23 Ib. 2.

*Davis & Adams,* for the plaintiff.

Upon the first point, we cite *Marsh* v. *Jones,* 21 Vt. 378 ; *Whitcher* v. *Morey,* 39 Vt. 459.

The question in Mrs. Fay's deposition was proper.

The declarations of Mrs. Earl to Dr. Clark, were properly admitted. *Kent* v. *Lincoln,* 32 Vt. 591.

The hypothetical question propounded to Dr. Clark, was proper. It comes within the rule laid down in *Fairchild et al.* v. *Bascom et al.* 35 Vt. 398.

The assault, as detailed in the evidence, was essentially one occurrence and one transaction. *Hodge* v. *Bennington,* 43 Vt. 450. But if not, the objection came too late. The plaintiff should have been put to elect upon which he would proceed. *Hodge* v. *Bennington, supra.* All the transactions were admissible in aggravation of damages. Chit. Pl. 428.

Earl & wife v. Tupper.

The charge upon the measure of damages, was correct. Sedgw. Dam. 528–532; *Devine* v. *Rand*, 38 Vt. 621.

The opinion of the court was delivered by

WHEELER, J. I. At common law, this action would not survive to a husband, nor to an administrator. At the decease of the female plaintiff, all the rights of the person claiming to be her husband, whether he was in fact her husband or not, came to an end. By the force of the statute, the action survived to her administrator, and after he appeared and entered into the suit, to prosecute it, he, as administrator, was the sole plaintiff. As she had died, and the administrator had entered to prosecute before the trial in the county court, that trial was solely of his right as administrator to recover of the defendant. This right of re-recovery did not rest at all upon any marital relation between her and the person set up as her husband, but would be fully made out by showing that the defendant was guilty of the doing to the intestate of the wrong sued for, and that the plaintiff was her administrator. Therefore, the question as to the effect of the divorce and the validity of the subsequent marriage, was of no importance in the case.

II. The presiding judge at the former trial was not required by law to take any minutes of the testimony of the witnesses. Whatever minutes he did take, were taken solely at his own pleasure, for his own convenience and guidance; and, when taken, they did not constitute an official record of the testimony. Such minutes were not record proof of the testimony, and were not of a higher grade of legal quality than minutes taken by other persons, as evidence, according to the rule of law requiring the best evidence to be produced, and it was not necessary to either produce them, or account for not producing them, before other evidence of the testimony of a deceased witness could be received.

Although the witness that had died was a party to the suit when she testified, she was a competent witness at the time she testified, and would have been competent to prove the same facts at this trial if she had been living, and it was proper that lawful evidence of her former testimony should be received. *Perry* v.

*Whitney,* 30 Vt. 390. The witness offered to prove her testimony, testified that he took minutes of it with substantial accuracy, and that he thought he had taken the exact words in many instances, although not in every particular, and he produced these minutes in connection with his testimony. This seems to be sufficient, according to the decision in *Whitcher* v. *Morey,* 39 Vt. 459. The reasons for that decision, as set forth in the opinion by STEELE, J., are clear and satisfactory, and there is no occasion for repeating them here. A similar decision has been made since that case, but it has not yet been reported.

III. The evidence on the part of the plaintiff appears to have tended to show that the injury done by the defendant to the intestate was permanent, and that she was suffering from it at the time of the former trial, when she was examined by a physician. The defendant seems to have insisted to the contrary of this. Her bodily condition at that time was important in the trial. What she said at that time as to the nature, symptoms, and effects of the malady she was then suffering from, was proper evidence. 1 Greenl. Ev. § 102. The defendant appears to have objected to the testimony of the physician as to what she then told him of her complaints and pains. What the witness testified that she did tell him of her complaints and pains, is not stated. The subjects of which she told him, were such as made testimony as to what she told him, proper, so long as it did not go beyond her bodily condition at that time, and, as it does not appear to have gone beyond that, no error in overruling the objection appears.

IV. The condition and health of a mother have great influence and effect upon her child during pregnancy, to and after the birth of the child. The condition and health of the intestate during the latter part of the time of her pregnancy, was important, and the fact that the child had spasms, or convulsions, at the time of its birth, if such was the fact, was a circumstance proper to be weighed with the other circumstances in the case bearing upon the condition of the mother after the time when that became important, for the purpose of determining what her condition, while it was important, in fact was; and there was no error in

allowing the question as to the condition of the child to be put and answered.

V. The only proper use of the evidence obtained by the question put upon the facts supposed to the medical expert, was to show to the jury what, in the professional opinion of the expert, caused the injury to the limb of the intestate, if the facts supposed to exist actually did exist. The actual existence of the facts was to be shown at some time during the trial by some means other than this question. The order of putting in the evidence was subject to the control of the court in its discretion, and the evidence of professional opinion upon facts supposed, might, if the court was satisfied that it was offered in good faith, expecting it would be followed by proof of the facts supposed, be admitted as well before the proof of the facts as after; or might be received after evidence of part of the facts, and before that of the rest. If, after the evidence was all in, there was a lack of evidence of the existence of any material part of the facts supposed, the jury should be instructed to lay the evidence of the opinion out of their consideration. The point made as to this evidence is upon its admissibility, and not upon the disposition afterwards made of it. Whether the case shows evidence of facts sufficient to warrant the court in leaving the existence of them to the jury, with the evidence of the opinion based upon them or not, is a question that has not been examined into by this court. The exceptions show no error in law in the admission of the question and answer.

VI. It is true, as claimed by counsel for the defendant, that no damages could properly be recovered in this action for any loss of the labor of the intestate that belonged to her husband. If the court had been requested to instruct the jury to that effect, and had declined to do so, otherwise than by the charge as given, perhaps there would have been error. But the charge as given did not direct the jury to find any damages on account of such loss of labor; nor, as to this part of the case, on account of any thing besides the personal injury to the intestate herself. The comments of the court upon the measure of such damages as

affected by the previous condition, as to health, of the intestate, and by her age, appear to have been just and proper, and no error appears in the charge as given in this respect.

VII.  Except in the particular just treated of, the charge of the court as to actual damages appears to have been satisfactory. But after charging fully in respect to actual damages, the court appears to have further charged that if the jury found the assault was committed in the manner and under circumstances indicating malice, they were at liberty to give exemplary damages.  That the object of exemplary damages was twofold; to compensate the party fully for his expenses and trouble he had been to about the case, that parties always have to incur, not taxable costs, but counsel fees, &c., and for the purpose of example, as a sort of punishment for the party who offends, and that if they came to the question of damages, and believed that the actual damages were not sufficient, and not as much as justice required between the parties, then they were at liberty, under the instructions, to give such exemplary damages, as they thought the case might require at their hands; and to this the defendant excepted. To what extent a plaintiff has a right to have the jury go in awarding damages where insult, indignity, and wounded honor and sensibilities, are a direct consequence of the injury recovered for, is not in question and necessary to be determined here; but the question is as to the right of the parties in respect to exemplary damages beyond just compensation for the injury recovered for.  The doctrines as to such damages, appear to have grown up out of the refusals of courts to grant new trials on account of excessive damages, in cases where the verdicts were greatly in excess of any possible pecuniary loss, but the injury recovered for was attended with malice, oppression, gross fraud, or negligence.  In such cases, such motions were usually overruled, unless it appeared that the jury were influenced by passion or prejudice, on the ground that the jury might, in their discretion under such circumstances, visit the defendant with greater damages against him, to show with what detestation they viewed such conduct as they found him guilty of, and to administer wholesome correction for it by way

of example.  Afterwards it came to be the practice of courts to instruct the jury that they were at liberty to enhance the damages in such cases for those purposes.  This was instructing the jury beforehand how far they might go without exposing their verdicts to be set aside.  This is now the settled practice in this, and most of the other states.  There are a few cases, and among these, some relating to patents, where the liability of defendants has been increased on account of their conduct in resisting the liability whereby the expenses of plaintiffs in obtaining remedy were increased.  These patent cases are said to rest somewhat upon the peculiar provisions of the statutes, and the others have not been generally followed.

The great weight of authority seems to be opposed to the allowance of counsel fees, and other expenses of litigation, beyond taxable costs, as an element of damages, even in cases proper for exemplary damages.  At least, there is so much authority that way, that this court is at liberty to disregard those the other way, if necessary in order to follow the rule most in accordance with legal principles and sound reason.  In this state, and in most, and, probably, all the others, the legislature has taken cognizance of the propriety and justice of allowing costs to some extent in favor of the winning against the losing party.  In this state, provision is made for attorneys' fees, and there is no distinction in law here between attorneys and counsel ; and, although the provision made is probably very small in comparison with the actual expense in most cases, it is as much as the law-making power has seen fit to make it, and courts and juries have no power to allow more, any more than they would have if it was large enough to cover all such actual expenses.  The power over this subject rests entirely with the legislature, and that has not made any provision for allowing actual expenses as damages in any case, although it has made some distinction as to costs in cases arising from the willful and malicious acts of defendants.  A party in an action upon contract may be as malicious, and may put the other party to as much expense, as in an action of tort for an act that was malicious, and no good reason is apparent why these expenses should not be considered as much in one of these cases

as the other. The true rule seems to be, that the plaintiff is entitled, as a matter of right, to recover compensatory damages for the injury done him by the act recovered for, with his legal costs, and that the jury, in cases proper for exemplary damages, are to be governed wholly by the malice or wantonness of the defendant, as shown by the conduct they find him liable for in the action, in awarding them.

The charge in this case left the jury at liberty to consider the expenses of the suit to the plaintiff for counsel fees and trouble, not taxable costs, and to allow these expenses to the plaintiff as a part of the exemplary damages, if they saw fit. This is considered to have been erroneous.

The counsel of the defendant insist that because the injured party had died, and the suit was prosecuted by an administrator, it was not, under those circumstances, a proper case for exemplary damages. If such damages were given as a compensation to the person injured, for some remote consequence of the injury, for which damages could not be given otherwise than as exemplary damages, there might be some reason for this view. But, as has been stated before, such damages are given to stamp the condemnation of the jury upon the acts of the defendant on account of the malicious or oppressive character of the acts, and the decease of the party injured, would not take away the bad character of the acts, nor prevent the jury from holding them in detestation, nor take away their right to visit the defendant with damages, to show what might be expected from similar conduct.

VIII. The several acts of violence which the testimony tended to show that the defendant did to the intestate at each of the barns, and at the house, were so connected together that each of them would, to some extent, characterize the others; and all together, if the testimony was true, made a continuous series of assaults and batteries, which might be included in one count of a declaration, with proper allegations. *Devine* v. *Rand,* 38 Vt. 621; *Hodge* v. *Bennington,* 43 Vt. 450. The first count in the declaration in this case, contains allegations sufficient to cover all these transactions, and seems to be well adapted to the case shown by the evidence. Judgment reversed and cause remanded.