## JEROME *v.* SMITH ET ALS.

*Evidence under the General Issue in Case. Railroad. Right to Eject Passengers from Cars for Nonpayment of Fare. Exemplary Damages.*

In trespass on the case, anything is admissible in evidence under the general issue that shows that the defendants is not guilty of anything actionable in respect to the matters charged in the declaration.

Plaintiff bought a ticket over defendants' railroad, with checks attached. While riding over the route that his ticket took him, one conductor detached and retained one of the checks, and gave him in lieu thereof a conductor's check that was a full equivalent for the check retained. Before plaintiff arrived at the point in his journey to which the conductor's check took him, another conductor took the train, whereupon plaintiff looked for his conductor's check, but could not find it. The second conductor demanded of him the production of the conductor's check or the payment of fare, and refused to let him ride on his ticket; and upon plaintiff's neglecting and refusing to comply with the demand, the conductor ejected him from the train at a station, using no unnecessary force. *Held*, that he was lawfully ejected.

*Semble.* In no case has a plaintiff any *legal right* to exemplary damages. Such damages depend upon the case, and the evidence and the finding of the jury.

CASE for ejecting plaintiff from defendants' cars. Pleas, the general issue and a special plea in bar. Trial by jury, April Term, 1875, ROYCE, J., presiding.

Defendants, as receivers and managers, were operating the Vermont Central and the Vermont & Canada Rail Roads.

Plaintiff bought a ticket of defendants' agent at Worcester, Mass., from Worcester to Montreal, that read, " Good for one first-class passage only on presentation of this ticket with checks attached." Three checks were attached to the ticket; one from Worcester to White River Junction, Vt., a point on the Vermont Central; one from White River Junction *via* the Vermont Central, to St. Johns, Canada; and one from St. Johns, *via* the Grand Trunk Railway, to Montreal. Plaintiff rode from Worcester to White River Junction on said ticket, and the conductor detached and retained the check between those points. Upon leaving White River Junction another conductor detached and retained the check from there to St. Johns, and in lieu thereof, and as an equivalent therefor, placed in plaintiff's hat band a white check, upon which was stamped the conductor's name and the date, and written in pencil the figures denoting the number of the station at St. Johns. Plaintiff did not know there was anything upon the check but the figures, and did not know their meaning. He rode to St. Albans without further demand for fare or other change of tickets. At St. Albans, he changed cars for Montreal, and before reaching the next station, another conductor came along, when plaintiff looked for the white check, but could not find it, and thereupon handed the conductor his ticket with check attached from St. Johns to Montreal. The conductor asked him if he had not got a white check, and he said he did have one but had lost it. The conductor told him the ticket produced was not good for his passage, and that he must produce the white ticket or pay his fare, and upon his neglecting and refusing to do either, but insisting that he had a right to ride upon his ticket, the conductor put him off the train at the next station, using no unnecessary force.

In taking up the check and substituting the white check, the conductor acted pursuant to defendants' instructions that had never been made public, and of which plaintiff had no knowledge; and plaintiff had no knowledge of any of defendants' rules, and had never been over their roads before. There was no evidence that plaintiff knew there was to be a change of conductors after passing White River Junction. Defendants had a rule that if passengers refused to pay fare, conductors might put them off the train in

compliance with the laws of the state, using no unnecessary force ; but this rule was never made public, and plaintiff had no knowledge of it.

Upon the foregoing facts, the defendants requested the court to direct a verdict for them ; but the court refused, and they excepted.

The court submitted to the jury to find what damage plaintiff had sustained by the act complained of, assuming that he was unlawfully ejected. The plaintiff claimed that he was entitled to recover exemplary damage, and the court so ruled, *pro forma*, to which defendants excepted.

· The jury returned a special verdict for $2000 damages, and found that the conductor who ejected plaintiff from the cars, did not find nor have in his possession the white check that was given to plaintiff, and that he did not find said white check, nor have it in his possession, at any time before the plaintiff was ejected ; that he did not know, nor have good reason to believe, that said check belonged to the plaintiff; and did not say that it did belong to him, or that he thought it did.

The court rendered judgment for the defendants, to which the plaintiff excepted.

*E. A. Sowles*, *H. S. Royce*, and *R. O. Sturtevant*, for the plaintiff.

*Noble & Smith* and *Edson*, *Rand & Edson*, for the defendants.

The opinion of the court was delivered by

WHEELER, J.    Question has been made about the admission of some of the evidence, because not covered by the notice of defence. But this is an action of trespass on the special case, and not *vi et armis*, and in this form of action anything is admissible in evidence, without plea or notice, that would show that the defendants were not guilty of anything actionable in respect to the matters charged in the declaration, although if the action was in the other form, it might have been necessary to plead the same matters specially. Such matters, if material at all, would show that

no cause of action ever existed, and not that one which did exist had been discharged, and would not be such as the statute requires notice of to be given, and there was no error in admitting the evidence.

As the case states that certain facts appeared on the trial and others were found by special verdict, it hangs here upon the correctness of the judgment rendered .upon all these facts. If on those.facts the plaintiff was wrongfully in the defendants' cars at the time he was expelled, the judgment was right, otherwise not. The right to eject for non-payment of fare, is given by statute, if statute authority can, in addition to common-law rights in such cases, on any ground, be necessary. The real question is, whether there was in fact such non-payment. When the plaintiff bought the ticket at Worcester with coupons attached, entitling the holder to ride over that part of the defendants' road he was riding on when ejected, he did not make any agreement with them or their agents that they would carry him in person over it as carriers agree to carry particular packages over their routes; but he bought what was symbolic evidence of a right that whoever should have it might ride, and what any other person could use as well as he. The title to it, and right to a passage upon it, would pass by mere delivery, and whoever should have it, could pay the fare of a passenger with it by delivering it in payment; but the mere fact of having had it, without having it to deliver in payment on reasonable request, would not entitle any one to the passage, any more than having a sufficient amount of money to pay the fare with, without paying it, would. When he entered on his passage over the defendants' road, .he had the coupon and tickets which would pay his fare throughout his intended journey over their line, and if he had delivered the coupon to the conductor in payment of his fare for the whole of that journey, he would have had the right to ride the whole distance without doing or paying anything more. But according to the facts, the conductor did not take the coupon as an equivalent. for the full passage, but only for the passage so far as he was to go as conductor, and gave the plaintiff the white check as evidence in lieu of the coupon, more symbolic, but equally effective, of the right to a pas-

30

sage the rest of the way. As the plaintiff did not know what the symbols on the check each meant, so probably he did not know what those on the ticket and on the coupon respectively meant; but, however that may have been, such checks are in common use among conductors on railroads, as evidence of the right to a passage, and the case not only does not show but that he understood what the purpose and effect of this one was, as persons ordinarily would, but does impliedly show that he did so understand, because it appears that he searched for it to use to pay his fare with when he saw the next conductor approaching him collecting fares. And although it was delivered to him only by placing it in his hat band, as he did not object, that was as much a delivery to him as placing it in his lap or in his hand would have been, and was sufficient to invest him with the ownership of it, and to bind him to take care of it, as of his own property. While he held that check he had not paid his fare beyond where that conductor was to go, but had what would pay it, or that of any other person, the rest of the way. If the conductor had not given him anything, or had given him something that he could not use, to pay his fare with, he would have received no equivalent for his coupon, and would have still been entitled to his passage, for an equivalent. But as it was, what he took was as good as the coupon for the rest of his journey, and with it he was situated the same as if he had kept the coupon, or as if he had bought the check of a station agent or conductor at the commencement of his journey, as evidence of his right to a passage, and shown it to one conductor and was keeping it to show to the next one. In either case, the duty of keeping it safely would be upon him. When he had lost it, the loss was his, and he was situated as he would have been if the coupon had been returned to him and he had lost that, and as any one would be who had bought a ticket to an opera or a lecture, or that would entitle the holder of it to any other privilege, and had lost it. Having lost it, he was called upon by the proper conductor to pay his fare. He had not any ticket or check to pay it with, and refused to pay it in money, consequently, there was a refusal to pay it at all, and the conductor rightfully expelled him from the train.

The books and cases cited in behalf of the plaintiff, are not, apparently, contrary to these views. Thus, in *Pittsburgh R. R.* v. *Hennigh*, 39 Ind. 509, the first conductor took up the ticket and gave no check nor anything showing a right to a passage, and the next one ejected the passenger for want of anything to show payment. The company was very properly held liable for that expulsion. In *Palmer* v. *Charlotte R. R. Co.* 3 S. C., N. S. 580, the plaintiff had a ticket which gave him the right to stop over at Columbia ; the conductor took it up and gave him a check that did not show any right to stop over. He stopped over, and on presentation of the check on the next train, was expelled. The court said that the conductor had no right to take up the ticket unless he placed the passenger in as good condition as he was in before, by giving a check or token evidencing his right to stop over and take a subsequent train. In *Maroney* v. *Old Colony R. R. Co.* 106 Mass. 153, the plaintiff had a ticket that was purchased of the agent of the defendants, and was apparently good for any regular train, and he was ejected from a regular train because by some rule, of which he had no notice, it was intended only for a special train. In *Hamilton* v. *Third Av. R. R. Co.* 53 N. Y. 25, the plaintiff paid his fare and received nothing to show he was entitled to a passage, and was ejected before he had the passage for which he had expressly paid. In *Moore* v. *Fitchburg R. R. Co.* 4 Gray, 465, the plaintiff had bought a ticket and given it up on his passage without receiving any evidence of a right to a passage in return, and was expelled before he had the rest of his passage. The other books and cases cited for the plaintiff, so far as observed, relate to the general rules of liability of carriers in respect to the persons and baggage of passengers who have with money or by ticket paid for and entered upon passage for some particular journey, and do not bear directly upon the question in this case. On the other hand, numerous authorities among those cited in behalf of the defendants sustain these views more or less directly. Among those most nearly in point, are *Hamilton* v. *N. Y. C. R. R.* 51 N. Y. 100 ; *Standish* v. *Narragansett Steamship Co.* 111 Mass. 512 ; *Townsend* v. *N. Y. C. & H. R. R. R. Co.* 56 N. Y. 295; *Duke and*

*wife* v. *G. W. R. R. Co.* 14 Up. Can. C. P. 369. According to these conclusions, the judgment for the defendants was correct.

This result makes it unnecessary to say anything about the *pro-forma* ruling as to exemplary damages. It may, however, be proper to remark, that if the ruling was as it is stated in the exceptions to have been, that the plaintiff was *entitled* to such damages, it was probably erroneous, for it is not understood that a plaintiff in any case has any legal right to them. *Earl and wife* v. *Tupper*, 45 Vt. 275. If, however, it was only ruled that the case was one in which such damages might be given if the evidence and finding of the jury would warrant, there probably was no error.

Judgment affirmed.